William O. KEATHLEY, Plaintiff,

v.

Joseph P. VITALE, et al., Defendants.

Civ. A. No. 2:94cv798.

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 20, 1994.

---

Jeffery L. Nuckolls, Basnight, Jones, Wright, Kinser and Telfeyan, Chesapeake, VA, for William O. Keathley.

Mark Douglas Stiles, Willcox & Savage, Norfolk, VA, for Joseph P. Vitale, William Mann, Dorothy Simmons, Frank Drew.

Lawrence Steven Emmert, Office of The City Atty., Virginia Beach, VA, for The City of Virginia Beach, VA.

### MEMORANDUM ORDER

CLARKE, District Judge.

This matter comes before the Court upon a Motion to Dismiss made by one of the named defendants, the City of Virginia Beach ("Virginia Beach" or the "Defendant"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Defendant's motion is **GRANTED** and Defendant Virginia Beach is dismissed.

### I.

On August 9, 1994 the plaintiff, William O. Keathley ("Keathley" or the "Plaintiff"), instituted this action pursuant to 42 U.S.C.A. § 1983 (West 1994). The Plaintiff, an employee of the Virginia Beach Sheriff's Department (the "VBSD"), avers that the Sheriff of Virginia Beach, Frank Drew ("Drew" or the "Sheriff"), and a number of his subordinates violated the Plaintiff's constitutional rights during a physical confrontation which occurred on or about August 19, 1993.

1. The Sheriff of Virginia Beach, Frank Drew,

According to Keathley, the confrontation arose when Joseph P. Vitale ("Vitale"), a Colonel in the VBSD, asked Keathley to enter Vitale's office; already present in the office were Major William Mann ("Mann") and Sergeant Dorothy Simmons ("Simmons"). Once in the office, Vitale discharged the Plaintiff from the VBSD and demanded that Plaintiff surrender his badge of office. After surrendering his badge, the Plaintiff complains that Vitale, Mann, and Simmons assailed and battered him. Thereafter, Plaintiff claims he was shackled and transported to the Tidewater Psychiatric Institute.[1]

### II.

The Plaintiff asserts that Virginia Beach is derivatively liable for the actions of the VBSD under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and its progeny. Virginia Beach, however, contends that derivative liability does not run against the city and therefore it should be dismissed from this action.

### A. Dismissal Under Federal Rule of Civil Procedure 12(b)(6):

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is construed in the light most favorable to the plaintiff and his allegations are taken as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Furthermore, the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Bruce v. Riddle,* 631 F.2d 272, 273–74 (4th Cir.1980). A court should not dismiss a complaint even if it appears on the face of the pleadings that the chance of recovery is very remote. *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686.

### B. Municipal Liability Under § 1983:

There are but two "essential elements" which a plaintiff must establish in order to state a claim under § 1983:

was not present during the alleged confrontation.

1. that the conduct complained of was committed by a person acting under color of state law; and

2. that this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981); *accord West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

■ In *Monell*, the Supreme Court held that a municipality is a "person" for purposes of § 1983 and therefore is amenable to suit. However, the scope of that liability was circumscribed: a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. 436 U.S. at 690–91, 98 S.Ct. at 2035–36. Thus a municipality is not liable *solely* because it employs a tortfeasor. *Id.* at 691, 98 S.Ct. at 2036 (emphasis in original). Instead, it is only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. *Id.* at 694, 98 S.Ct. at 2037.

Accordingly, Virginia Beach could be held liable under § 1983 for the actions of some set of persons beyond its actual "lawmakers." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986) (plurality opinion). In his complaint, the Plaintiff alleges the following:

> [T]he treatment inflicted upon the Plaintiff, William O. Keathley, by the Defendants is indicative of a policy or practice in discharging employees from the Virginia Beach, Virginia, Sheriff's Department.

(Complaint, Paragraph 29.) Taking into account the *Monell* standard, and the oral arguments presented at hearing, we understand Paragraph 29 as alleging that Drew is a final policy maker who established an unconstitutional goal and who carried out that goal in an unconstitutional manner.[2] That is, that Drew possessed "final authority" to establish policy for the City of Virginia Beach with respect to his employment decisions.

Thus this Court must determine whether or not the Sheriff was a final municipal "decisionmaker" such that his actions, and the actions of his subordinates, should be attributed to Virginia Beach. Of course, if the Sheriff does not have final policymaking authority with respect to Virginia Beach—if he is not a final municipal decisionmaker—then derivative liability should not extend. The benchmark for this determination is state law.[3] *Id.* at 483, 106 S.Ct. at 1300; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); *Strickler v. Waters*, 989 F.2d 1375, 1390 (4th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).

### III.

### A. *The Relevance of State Law:*

■ In *Praprotnik*, Justice O'Connor observed that state law "will always direct a Court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." 485 U.S. at 125, 108 S.Ct. at 925. The Defendant points to the Virginia Constitution as a primary source of state law and argues that Drew is a "constitutional officer" who serves "independent of municipal government." (Defendant's Brief in Support of Motion to Dismiss at 2–3.) There is ample support that the Fourth Circuit has accepted this as a correct statement of Virginia law. *See Sherman v. City of Richmond*, 543 F.Supp. 447, 449 (E.D.Va.1982); *Himple v. Moore*, 673 F.Supp. 758, 759 (E.D.Va.1987);

---

2. The Court contrasts this claim with the analytically distinct claim that a municipality's final policy makers are held effectively to have made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinates. *See Turner v. Upton County, Texas*, 915 F.2d 133, 136 (5th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850

(1991) (discussing various theories of municipal liability under § 1983).

3. The identification of policy making officials is a question of state law because "it is self-evident" that official policies can only be adopted by those legally charged with doing so." *Praprotnik*, 485 U.S. at 125 n. 2, 108 S.Ct. at 925 n. 2.

*Olivo v. Mapp,* 838 F.Supp. 259, 261 (E.D.Va. 1993); *Strickler,* 989 F.2d at 1390.

Although the Plaintiff concedes the authority of the above cited cases, Keathley nevertheless argues that,

> [Municipal] liability relies more on *final policy making authority* than on the technical characterizations of an official as a state or county employee. Thus, the city's plea that the Sheriff is a state employee is of little consequence in the analysis established by the Supreme Court [in *Praprotnik* ]. More important, says the Court, is the Sheriff's policy making authority.

(Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss at 4.) (emphasis in original). However, Keathley appears to misapprehend both the import of the Defendant's argument and the Supreme Court's rationale in *Praprotnik.* Justice O'Connor wrote that "the authority to make municipal policy is necessarily the authority to make final policy." *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926. However, the reverse is not also true: the fact that the Sheriff's decisions are final (i.e., discretionary) does not make them municipal policy. To accept this argument would be to adopt the type of *respondeat superior* regime which was expressly rejected by the Supreme Court in *Monell.* In sum, the Plaintiff cannot sidestep his burden: in order to impose municipal liability upon Virginia Beach, he must show that under Virginia law the Sheriff ·is a final municipal policymaker with respect to the constitutional violations alleged.

4. At the outset, we note that reliance on *May* is troublesome because, as this Court has previously observed, that case can be construed as directly conflicting with the subsequent Fourth Circuit decision in *Strickler. See Olivo v. Mapp,* 838 F.Supp. 259, 261 (E.D.Va.1993) (opinion by Clarke, J.). Furthermore, Judge Williams' decision in *May* must be read in conjunction with his later denial of defendant's motion to reconsider *May* in light of *Strickler. May v. Newhart,* Civil Action No. 3:92cv238 (E.D.Va. July 7, 1993) (unpublished decision).

5. We note that Keathley chose to frame this actions as exclusively involving the employment practices of the Sheriff. (Complaint at Paragraph 29). However, at the hearing, Plaintiff admittedly departed from the arguments made in his brief—as well as the facts contained in the

### B.  *May v. Newhart:*

Accordingly, *Strickler* and the other cases which Virginia Beach cites are persuasive because if the Sheriff's employment decisions are "independent" of the municipal government, then there can be no derivative liability. Plaintiff counters that the Court should consider *May v. Newhart,* 822 F.Supp. 1233 (E.D.Va.1993).[4] In that case, Judge Williams held that the City of Chesapeake was liable for the actions of its sheriff in operating city jail facility.

Plaintiff would have this Court extend the rationale of *May* from the operating of a jail to the hiring and firing employees. However, Judge Williams himself patently refused any such extension:

> When a sheriff executes his law enforcement duties, he acts on behalf of the state; when he fires and hires his own deputies he does so in his capacity as a constitutional officer. But when he operates a jail he acts on behalf of the locality he serves.

*May v. Newhart,* Civil Action No. 3:92cv238 (E.D.Va. July 7, 1993) (denial of defendant's motion for reconsideration) (unpublished decision). Therefore, without commenting on the wisdom of extending municipal liability under § 1983 to encompass the operation of a jail facility, this Court refuses to extend the rationale in *May* to include the Sheriff's hiring and firing of employees.[5]

### C.  *Relevant Precedent:*

Plaintiff points to little else besides the June 9, 1993 *May* decision which would justify the extension of liability against Virginia

record—and instead followed a new line of attack. Plaintiff now posits that, at some point during the physical confrontation, the employer-employee relationship ceased and Keathley became a "charge" of Virginia Beach. Thus Plaintiff attempts to force this case into the narrow opening created by Judge Williams in *May.* Even assuming *arguendo* that the record would support such a contention, the Court still refuses to hold the Defendant liable because, unlike the plaintiff in *May,* 822 F.Supp. at 1234, Keathley was not an inmate of the city jail. Furthermore, Keathley advances no argument to bypass the Fourth Circuit's decision in *Strickler,* 989 F.2d at 1390, a case subsequent to *May* and one that this Court believes should guide its approach in extending municipal liability.

Beach. However, as noted above, that decision is not controlling; especially when read in conjunction with the July 7, 1993 opinion Judge Williams issued in response to the defendant's motion for reconsideration and the subsequent Fourth Circuit pronouncement in *Strickler.*

Furthermore, while Keathley does provide a lengthy list of state statutes which demonstrate a relationship between local municipalities in Virginia and their respective sheriff departments, he offers no specific provisions of the Virginia Code which would support his contention that the hiring and firing of VBSD employees should be attributed to Virginia Beach. Simply put, Keathley has not made the showings required under *Monell.*

However, Keathley's failure cannot be attributed to a dearth of law on point. As previously mentioned, the Virginia Constitution establishes that sheriffs are independent constitutional officers whose duties and authority are controlled by statute. *See* Va. Const. art. 7 § 4; *Hilton v. Amburgey,* 198 Va 727, 729, 96 S.E.2d 151, 152 (1957). The Virginia Code makes deputies employees of the sheriff, not employees of the municipal governing body, and provides that they "may be removed from office by [their] principal," the sheriff. Va.Code Ann. 15.1–48 (Michie 1989). Furthermore, Virginia case law holds that because a sheriff is a "state officer," a county cannot be held liable for his actions. *Board of Supervisors v. Lucas,* 142 Va. 84, 90, 128 S.E. 574, 576 (1925).

Moreover, Defendant cites to a number of Fourth Circuit cases which, after considering Virginia law, uniformly establish that the sheriff is a "constitutional officer" who serves "independent of municipal government." *Sherman,* 543 F.Supp. at 449; *Himple,* 673 F.Supp. at 759; *Olivo,* 838 F.Supp. at 261; *Strickler,* 989 F.2d at 1390; *see also* Va. Const. art. VII, § 4. In particular, this Court believes its decision in *Olivo* to be

dispositive of the instant issue: "the employment practices of a sheriff do not involve the exercise of any policymaking authority on behalf of a locality." [6] *Olivo,* 838 F.Supp. at 261. Therefore, as a matter of state law, the authority which Drew and his subordinates exercised in allegedly violating Keathley's constitutional rights did not flow from the City of Virginia Beach.

**D. *Sheriff Drew is an Elected Official:***

Finally, in an effort to escape the conclusion which state law requires, Plaintiff argues that,

> In the City of Virginia Beach the citizens elect the Sheriff. Therefore the citizens themselves bestow to that Sheriff the final policy making authority attendant with his office. Inclusive in that grant comes the authority to make policy decisions concerning the city jail, policy to hire and fire his deputies, policy to enforce local and state law and policy regarding process issued by the City's Courts.

However, Plaintiff fails to reconcile this wide ranging proposition with the relevant Supreme Court case law.

It is true that the citizens of Virginia Beach elected Frank Drew as Sheriff, and that once elected Drew had in some respects "final policy making authority attendant with his office." Yet Plaintiff proffers no authority to support the proposition that the electoral process is a sufficient basis upon which to attribute Drew's acts *with respect to employment decisions* to Virginia Beach.[7] More importantly, Keathley posits no method by which this Court would be able to discern which acts "attendant with" the office of Sheriff should be attributed to the City and which should not. In essence, Drew asks that this Court create a vast "elected official" exception to *Monell.* We decline any such expansion.

---

**6.** This Court also notes that the Fourth Circuit has established that sheriffs' deputies in Virginia do not have a protectable property interest in their employment because "state law makes them at-will employees serving at the discretion of the sheriff." *Jenkins v. Weatherholtz,* 909 F.2d 105, 107 (4th Cir.1990).

**7.** The Court realizes that other Circuits have premised municipal liability *in part* on the fact that the sheriff in question was elected. *See e.g., Turner,* 915 F.2d at 136 (emphasis added). However, Keathley cites no cases which establish that liability would extend for the *employment practices* of a sheriff and he did not address this point at oral argument.

## IV.

For the above stated reasons, the Court holds that Defendant Virginia Beach shall be **DISMISSED** from this action with prejudice. The Clerk is directed to send a copy of this Order to counsel for all the parties named.

### IT IS SO ORDERED.